## BLAIR v. MORGAN.

AGRICULTURAL LIENS—ATTACHMENT.—ACT, 23 STAT. 31, does not amend the procedure as to the enforcement of agricultural liens, but refers alone to attachments; and there is no law requiring the affidavits upon which warrant of seizure of crops is issued to be filed in clerk's office in two days, nor that copies be served on opposite party. MR. JUSTICE POPE *dissents.* *Rev. Stat., 2519, construed. Ketchin* v. *Landecker,* 32 S. C., 158; *Doty* v. *Boyd,* 46 S. C., 42, *and Townsend* v. *Sparks,* 50 S. C., 380, *criticised and distinguished from this.*

Before ALDRICH, J., Fairfield, March, 1900. Affirmed.

Proceeding to enforce an agricultural lien by L. M. Blair against G. B. Morgan.    From Circuit order refusing motion to vacate warrant of seizure, lienor appeals.

*Messrs. Ragsdale & Ragsdale,* for appellant, cite: *Affidavits must be filed within forty-eight hours:* Rev. Stat., 2519; 46 S. C., 42; 50 S. C., 380; 32 S. C., 158.    *Courts have never strictly construed constitutional provisions that an act should relate to but one subject, and that should be expressed in its title:* 16 S. C., 47; 18 S. C., 464; 19 S. C., 116; 23 S. C., 427; 30 S. C., 9; 31 S. C., 292; 39 S. C., 307.

*Mr. W. D. Douglass,* contra, cites: *Attachment and process to enforce an agricultural lien is quite different:* 31 S. C., 452; 27 S. C., 131; 31 S. C., 334; 42 S. C., 348.    *If act of 1899 were construed to apply to agricultural liens, it would be unconstitutional:* Con., art. III., sec. 17; 31 S. C., 453.

October 2, 1900.    The opinion of the Court was delivered by

MR. JUSTICE POPE.    G. B. Morgan gave to L. M. Blair a lien on his crops to secure $500 advances made for agricultural purposes, and failed to pay such debt at maturity; but being about to dispose of his crops to defeat the lien of Blair, Blair applied to the clerk of the Circuit Court for Fairfield County for a warrant to enable the sheriff to seize the crops of G. B. Morgan to protect Blair's lien for supplies.    The warrant was issued on the 13th December, 1899, and the sheriff seized the crops on the 14th December, 1899, but the papers and the affidavit were not filed in the clerk's office until the 18th December, 1899, and were never served upon the said Morgan.    The defendant, Morgan, moved before his Honor, Judge James Aldrich, at the February, 1900, term of the Court of Common Pleas for Fairfield County for an order to set aside said warrant upon grounds hereinafter set out.    The order was refused by Judge Aldrich.    Thereupon the defendant appealed to this Court.

The following is the order passed by Judge Aldrich, to wit: "This is a motion to set aside and vacate a warrant of seizure under an agricultural lien. The warrant was issued by the clerk of this Court on the 13th day of December, 1899. The sheriff made his return on the 14th day of December, and the papers were filed in the office of the clerk of this Court on the 18th day of said month. The defendant moves to set aside and vacate said proceedings upon the following grounds: 'First. Because the said warrant was illegally and irregularly issued. Secondly. Because the said warrant was improvidently issued. Thirdly. Because the affidavit upon which the said warrant was isued was wholly insufficient, and the material statements untrue.' I cannot sustain these grounds.

"The defendant further relies upon the following grounds: 'Fourthly. Because no copies of the said warrant were served on the defendant. Fifthly. Because the said affidavit was not filed in the office of the clerk of Court, as required by law.' It is contended under these two grounds that the act of 1899, entitled 'An act to amend section 250 of the Code of Civil Procedure of this State relating to affidavits in attachment cases,' applies also to the issuing of warrants of seizure for the enforcement of agricultural liens. The act of 1885 (19 Stats., p. 429-430), entitled 'An act to amend section 2398 of the General Statutes relative to the enforcement of agricultural liens,' provides, 'that the affidavit and statements to be used to obtain such warrant of seizure shall conform, as nearly as may be, to the practice regulating the issuing of warrants of attachments under the Code of Procedure, and the person against whom it is issued shall have the right to move before * * * a Circuit Judge, to vacate said warrant of seizure for any of the causes which would be sufficient to vacate a warrant of attachment issued under the Code of Procedure.' Now it is contended by defendant's counsel that the act of 1899, which relates to attachment cases, and which provides that 'it shall be the duty of the plaintiff procuring such warrant of attachment,

at the time of issuing thereof, to cause the affidavits on which the same was granted to be filed in the office of the clerk of Court of Common Pleas * * * within forty-eight hours after the issuance of the attachment,' and 'also cause copies thereof to be served on the defendant with the summons, if he can be found within the county,' is an amendment to the act of 1885, relative to the enforcement of agricultural liens. 'A warrant of seizure,' as used in the act of 1885, is procured for the purpose of enforcing a lien already in existence or created, 'while a warrant of attachment' is procured *to acquire or create* a lien. This distinction is recognized by the Supreme Court, and it becomes important in determining the question here raised. In *Sharp* v. *Palmer,* 31 S. C., on page 452, Chief Justice McIver, referring to the act of 1885, says: 'Here, also, it is sufficient to say that we know of no law requiring the service of such papers in a proceeding like this. It will be observed that the act of 1885 does not, as seems to be supposed by counsel for appellant, require that the *practice* in enforcing a lien shall conform to the practice under the attachment law; but the requirement is "that the affidavit and statements to be used to obtain such warrant of seizure shall conform, as nearly as may be, to the practice regulating the issuing of warrants of attachment." The only conformity required is in the affidavit and statements in the subsequent proceedings. * * * There is great force, too, in the view presented by the Circuit Judge, that an attachment is in the nature of a *mesne* process, where copies are usually required to be served.' In *Monday* v. *Elmore,* 27 S. C., p. 131-133, Chief Justice Simpson recognized this distinction, when he said: 'It must be remembered that this was a proceeding upon an agricultural lien, and while this lien law does provide that the affidavit for a warrant of seizure in such cases should "conform as nearly as may be" to the practice in ordinary attachment, yet there is this material distinction between the two: in attachment cases, there is no lien on the property attached, which it is intended to enforce * * * but in agricultural contracts there

is a lien.' It will be observed that the act of 1899 relates to 'affidavits in attachment cases,' and provides that 'copies shall be served on the defendant *with the summons,*' thus indicating that the act relates exclusively to the creation of a lien by attachment through a suit commenced, and not to a 'warrant of seizure' under an agricultural lien, which is in the nature of 'a final process' to enforce a lien already existing. 'The words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object the legislature has in view.' Endlich on Stats., sec. 59. The subject of the act of 1899 is clearly attachment cases. No reference whatever is made to warrants of seizure to enforce agricultural liens. In section 74 the same author says: 'Upon subjects relating to Courts and legal proceedings, the legislature may be presumed to speak technically, unless from the statute a different use of language is apparent.' The agricultural lien and the mode of its enforcement is purely statutory; and no statute which does not purport to amend or affect agricultural liens or their enforcement, can apply; and the act of 1899 does not purport to amend the agricultural lien law, or the mode of enforcing such liens, but, as its title indicates, this act amends 'section 250 of the Code of Civil Procedure of this State, relating to affidavits in attachment cases.' It will be further noted that the act of 1885 *expressly* provides that the 'affidavit and statements to be used to obtain such warrant of seizure shall conform, as nearly as may be, to the practice regulating the issuing of warrants of attachments,' &c.; but the act of 1899 makes no reference to 'warrants of seizure' under an agricultural lien. In Endlich on Stats., sec. 85, it is said: 'Upon the principle stated seems to rest the rule that an act adopting by reference to the whole or a portion of another statute, means the law as existing at the time of the adoption, and does not adopt any subsequent addition thereto or modification.' There is some force, too, in the contention of plaintiff's counsel, that to apply the act of 1899 as an amendment to the law regulating the enforcement

of agricultural liens would be in violation of the letter and spirit of sec. 17, art. III., of the Constitution of the State, which requires: 'Every act or resolution having the force of law shall relate to but one subject, and shall be expressed in the title.'

"I, therefore, hold that the act of 1899 does not apply to the enforcement of an agricultural lien, and is not an amendment to the act of 1885, or to the law relating to agricultural liens and the mode of their enforcement. The motion is refused."

The defendant excepts to the order of his Honor, James Aldrich, filed herein on the 18th day of March, 1900:

"1. For that his Honor erred, in that he should have held that the affidavit upon which the warrant of attachment was issued in this proceeding, not having been filed in the office of the clerk of Court within forty-eight hours after the issuance of the said warrant, that the said warrant should for that cause be vacated and set aside. 2. For that his Honor erred, in that he should have held that no copy of the said affidavit having been served on the defendant, as required by law, that the said warrant should for that cause be vacated and set aside. 3. For that his Honor erred, in holding that it is not necessary to file in the clerk's office the affidavit upon which a warrant of attachment under an agricultural lien is issued, within forty-eight hours after the issuance thereof, and that it is not necessary to serve a copy of such affidavit on the defendant."

It seems to us that the Circuit Judge is in error, as is pointed out in the foregoing exceptions for the following reasons. The law of this State regulating agricultural liens, as set out in section 2519 of vol. 1, Revised Statutes of this State, so far as the method of procuring and issuing a warrant for seizure of crops, is as follows: "Sec. 2519. The affidavit and statements to be used to obtain any warrant of seizure provided for in the two last preceding sections (sec. 2517 relates to applications to clerk of Court to issue warrants of seizure of crops, and sec. 2518 relates to applications

to magistrates in liens under $100) shall conform as nearly as may be to the practice regulating the issuing of warrants of attachment under the Code of Procedure; and the person against whom it is issued shall have the right to move before the clerk of Court, or trial justice by whom it is issued, or a Circuit Judge, to vacate said warrant of seizure for any of the causes which would be sufficient to vacate a warrant of attachment issued under the Code of Procedure." * * * Two things, amongst others, appear in this section: *first,* the affidavit and statements must conform, as nearly as may be, to the practice regulating the issuing of warrants of attachment under the Code of Procedure; and *second,* a Circuit Judge may vacate such a warrant for any of the causes which would be sufficient to vacate an attachment under the Code of Procedure. Prior to the year 1899, section 250 of our Code of Procedure required that: "It shall be the duty of the plaintiff procuring such warrant (warrant of attachment), within ten days after the issuing thereof, to cause the affidavits on which the same was granted to be filed in the office of the clerk of the Court of Common Pleas * * *" While this section, 250, as it was prior to the year 1899, was of force, this Court had occasion to consider what these terms meant, and whether they applied to warrants for the seizure of crops under agricultural liens. In *Ketchin* v. *Landecker,* 32 S. C., 158, where the Court said, in discussing the filing of affidavits under a warrant of attachment, as required by section 250 of the Code of Procedure: "But be this as it may, it is quite sufficient for us to know that the law-making power has required the filing of the original affidavits; for in the language of O'Neall, J., in *Myers* v. *Lewis,* 1 McM., 54: 'We have no right to do more than to say *ita lex scripta est.*' While this precise question has never heretofore been brought before this Court, yet in the case of *Wagener* v. *Booker,* 31 S. C., 375, it was spoken of, and it was then plainly intimated that a failure to comply strictly with this requirement of the statute would be fatal, even where copies, but not the original, had been filed in due

time.   Here, however, neither the original nor the copies
were filed *within* the prescribed time, *and this was clearly
fatal"* (italics ours).   The prescribed time was ten days.
So, too, in the case of *Doty* v. *Boyd,* 46 S. C., 42, it was held
by this Court that the failure to file the affidavit in the office
of the clerk of the Court of Common Pleas rendered the
warrant null and void, recognizing the authority of the case
of *Ketchin* v. *Landecker, supra;* and also it was held to apply
to and govern warrants to seize crops.   What change in the
law relating to agricultural liens and warrants for seizure of
crops thereunder has been wrought by the act of 1899, 23
vol. Statutes at Large of this State, page 31, which merely
changed ten days into two days (or forty-eight hours), and
also required copies of affidavits to be served with the sum-
mons upon the defendant?   All the change made was that
the time of filing affidavits with the clerk of the Court is re-
duced from ten days to two days, and that service of copies
of affidavits must be made upon defendant.   So that now
there no longer exists sec. 250 of the Code of Procedure as
it was prior to the act passed in 1899.   What practice
exists in the Code of Procedure regulating the issuance of
writs of attachment?   We answer: section 250 of the Code
of Procedure, as it was amended by the act of 1899.   This
being so, the *time of ten days* in which affidavits, upon which
warrants for attachments issue, should be filed in the office
of the clerk of Court, is blotted out of section 250 of the
Code of Procedure.   Where, therefore, section 2519 of vol.
1, Revised Statutes of this State, directs that the affidavits
and statements upon which warrants, for seizure of crops
for violation of the agricultural lien law, shall conform to
the practice regulating the issuing of warrants of attach-
ment under the Code, it must mean the law as it is set out in
the Code of Procedure now or at this date, for the section,
250, as it existed prior to the year 1899, no longer exists.
Besides, how can you apply in the year 1900 in your effort to
vacate a writ to seize crops that provision of the law which
governed in the effort to vacate writs of attachment under

the act of 1885 (section 250 of the Code, as it existed prior to the year 1899), when so much of said act as prescribes ten days within which to file affidavits in the clerk's office no longer exists; but on the contrary two days (forty-eight hours) is now prescribed? It follows that the affidavits must be filed in forty-eight hours or otherwise no law governs.

The Circuit Judge was in error, and his order must be vacated. In my opinion, the judgment of this Court should be: "It is the judgment of this Court, that the order of the Circuit Court appealed from be reversed and vacated, and that the proceedings be remitted to the Circuit Court to prepare an order vacating the writ for seizure of defendant's crops;" but the majority affirm the Circuit judgment from which I dissent.

MR. JUSTICE GARY *dissents, and concurs in the dissenting opinion of* MR. CHIEF JUSTICE MCIVER.

MR. JUSTICE JONES *concurs in affirming the judgment of the Circuit Court, for the reasons stated in the opinion of that Court.*

MR. CHIEF JUSTICE MCIVER, *dissenting.* Not being able to concur in the conclusion reached by Mr. Justice Pope in this case, I propose to state, as briefly as practicable, the reasons for my dissent. For a proper understanding of the questions raised by this appeal, it seems to me important to keep in mind the precise nature of the proceedings out of which such questions arise. I find it thus stated in the "Case:" "This is a proceeding brought to enforce an agricultural lien on defendant's crops. The lien was executed by the defendant to the plaintiff on the 1st day of February, 1899, to secure advances to the extent of $500. On the 13th day of December, 1899, a warrant was issued by the clerk of Court for Fairfield County on the application of the plaintiff, directed to the sheriff of Fairfield County, commanding him to seize the crops of defendant covered by the said lien.

The warrant was delivered to the sheriff on the 13th day of December, 1899, and was executed by him on the following day by seizing the crops of the defendant. The warrant and the affidavit upon which it was issued were filed in the office of the clerk of Court on the 18th day of December, 1899, but no copy of the affidavit or of the warrant was served on the defendant." A motion was made before his Honor, Judge Aldrich, to set aside "the said warrant of seizure," upon several grounds, only two of which need be stated here: 1st, because the affidavit upon which the warrant was issued was not filed in the office of the clerk of the Court within the time prescribed by law; 2d, because no copy of said affidavit was served upon defendant, as required by law. The Circuit Judge overruled both of these grounds and granted an order refusing the motion. From this order defendant appeals, imputing error to the Circuit Judge in overruling the two grounds above stated upon which his motion to set aside the warrant of seizure was based. This being, as we have seen, "a proceeding brought to enforce an agricultural lien on defendant's crops"—a proceeding of purely statutory origin—the first inquiry is whether there is any provision in the various statutes upon the subject, requiring either that the affidavit upon which the warrant to enforce such lien can be procured, shall be filed in the office of the clerk, or be served upon the party against whom the warrant is issued. These statutes will be searched in vain for any such provision. It is not to be found in the original act of 1866, 13 Stat., 380 (366$^{12}$), nor is it to be found in the present law upon the subject, as incorporated in sections 2512-2522, inclusive, of the Rev. Stat. of 1893, sec. 2512, which prescribes what is necessary to be done in order to obtain a warrant for the enforcement of an agricultural lien, only provides that the person making the advances "shall prove, by affidavit, to the satisfaction of the clerk of the Court of the county in which such crop is, that the person to whom such advances have been made is about to sell or dispose of his crop, or in any other way is about to defeat the lien

hereinbefore provided for, accompanied with a statement of
the amount then due, it shall be lawful for said clerk to issue
his warrant," etc.; and in section 2518 similar provision is
made, where the application for the warrant is to a trial jus-
tice (now magistrate) to enforce a lien to secure advances to
an amount not exceeding $100. Then follows section 2519,
upon which appellant relies, in these words, "the affidavit
and statements to be used to obtain any warrant of seizure
provided for in the two last preceding sections shall conform
as nearly as may be to the practice regulating the issuing of
warrants of attachment under the Code of Procedure; and
the person against whom it is issued shall have the right to
move before the clerk of the Court, or trial justice by whom
it is issued, or a Circuit Judge, to vacate said warrant of
seizure for any of the causes which would be sufficient to
vacate a warrant of attachment issued under the Code of
Procedure." The provisions of this section, especially the
latter part of it, the appellant contends, places a motion to
vacate a warrant to enforce an agricultural lien precisely
upon the same ground as a motion to vacate a warrant of
attachment; and that as there are provisions in the statute
law in regard to a proceeding by attachment proper, requir-
ing that the affidavit upon which such a warrant is obtained
shall be filed with the clerk and served upon the defendant,
within a specified time, under which it has been held that a
failure to comply with such provisions furnish good ground
for a motion to vacate *a warrant of attachment*, the conten-
tion is that a motion to vacate or set aside a warrant to
enforce an *agricultural lien* should be granted, if the affidavit
upon which such warrant is obtained is not filed or is not
served upon the defendant within the time prescribed in ref-
erence to a warrant of attachment, although there is no law
requiring the affidavit usual in obtaining a warrant to en-
force an agricultural lien to be either filed or served. In
other words, the contention is that a warrant to enforce an
agricultural lien must be vacated if the person who obtains
it fails to do an act which there is no law requiring him to

do—filing or serving his affidavit.   I cannot think that such a contention can be sustained, either in reason or upon authority.   To hold a person liable to a penalty—the loss of his warrant—for failing to do something which there is no law requiring him to do, would, it seems to me, be repulsive to sound reason.   But, in addition to this, the proper construction of section 2519 of the Rev. Stat., or rather of the act of 1885, 19 Stat., 429, from which that section is taken, has already been determined by what was said in *Sharp* v. *Palmer,* 31 S. C., at p. 452-453, in accordance with the view which I have adopted.   As was there said: "It will be observed that the act of 1885 does not, as seems to be supposed by counsel for appellant, require that the practice in enforcing a lien shall conform to the practice under the attachment law, but the requirement is that the affidavit and statements to be used to obtain such a warrant of seizure shall conform, as nearly as may be, to the practice regulating the issuing of warrants of attachment.   The only conformity required is in the affidavit and statements, not in the subsequent proceedings."   In other words, my view is that the proper construction of the act of 1885, now incorporated in the Rev. Stat. as section 2519, is this, that in testing the sufficiency of the "affidavit" and "statement" which the person seeking to obtain a warrant to enforce an agricultural lien is required to make by section 2517 of the Rev. Stat., resort must be had to the settled rule as to the sufficiency of the statement required to be made in obtaining a warrant of attachment; but that the section was not intended to require, that a person seeking to enforce an agricultural lien, should conform to the requirements of the attachment law.   The case of *Sharp* v. *Palmer, supra,* has never since been questioned, so far as I am informed; but, on the contrary, has been expressly recognized in the very recent case of *Southern Railway Co.* v. *Sarrat,* 58 S. C., 98.   In other words, my idea is that if the *affidavit* and *statement* required of a person who is seeking to obtain a warrant to enforce an agricultural lien, does not conform to that required of a person seeking to

obtain a *warrant of attachment,* then the warrant to enforce
an agricultural lien may be vacated. For example, if the
affidavit is made upon information and belief, and contains
no statement of the source of such information or the
grounds of such belief, or if the accompanying statement
does not show clearly and distinctly the amount then due,
the warrant may be vacated for want of conformity to the
affidavit required in case of attachment. But to hold that,
when such conformity does appear, the warrant to enforce
such a lien may be vacated because it does not comply with
any other requirement not found in any of the statutory
provisions establishing the mode of acquiring an agricul-
tural lien, and prescribing the mode by which such lien may
be enforced, would necessitate an interpolation in such
statutory provision of a requirement which the legislature
has not seen fit to incorporate in such statutory provisions.
The case of *Ketchin* v. *Landecker,* 32 S .C., 155, cited by Mr.
Justice Pope in his opinion, in my judgment has no applica-
tion to this case, because that was a case in which the sole
question was whether a warrant of attachment proper should
be vacated for want of compliance with certain requirements
contained in the attachment acts, which are not contained in
any of the statutes relating to agricultural liens.

The cases of *Doty* v. *Boyd,* 46 S. C., 39, and *Townsend* v.
*Sparks,* 50 S. C., 380, have also been cited and relied upon
by counsel for appellant. It is not to be denied that there
are expressions in both of those cases which do seem to sup-
port appellant's contention; but when those cases are care-
fully examined, it does not seem to me that they can be re-
garded as authoritative decisions of the question here under
consideration. In the former, *Doty* v. *Boyd,* the motion
was to vacate a warrant issued to enforce an agricultural
lien, and was based upon two grounds: 1st. Because the
paper styled an affidavit was not, in fact, an affidavit, because
while signed by the alleged affiant, it was not signed by any
officer authorized to administer an oath. 2d. Because the
original undertaking affidavit (or what purports to be an

affidavit) and other papers were not filed in the office of the clerk of Court within ten days after issuing the same, as required by section 250 of the Code of Procedure of this State and rule 69 of the Circuit Court of this State. The Court held that the paper claimed to be an affidavit was not an affidavit, and hence the clerk had no jurisdiction to issue the warrant, and, therefore, the first ground was sustained. This was conclusive of the case, and the warrant being fatally defective for lack of *jurisdiction,* it was not only unnecessary, but improper, to consider any other question in the case. It is true, that the Court did also sustain the second ground, which was not only a work of supererogation, but the conclusion was rested entirely upon the case of *Ketchin* v. *Landecker, supra,* which, as has been shown, had no application to the case. In the other case—*Townsend* v. *Sparks*—it was held that a warrant to enforce an agricultural lien may be vacated for failure to file the affidavit upon which the warrant was obtained, with the clerk within ten days after the issuance of such warrant. But this conclusion is based entirely upon the cases of *Ketchin* v. *Landecker* and *Doty* v. *Boyd, supra,* and it is unnecessary to repeat here what is said above as to those two cases. I may add, in reference to the cases of *Doty* v. *Boyd* and *Townsend* v. *Sparks*—and I do so with the greatest deference to the learned Justices who prepared the opinions in those two cases—that the expressions found in those opinions, which are relied upon by the appellant, arose from the fact that the fundamental difference between the proceeding by attachment proper and the proceeding to enforce an agricultural lien, was overlooked, no doubt, for the reason that the question now presented was not brought to the attention of the Court when those cases were considered, especially when it is apparent that the conclusions reached in both of those cases might very well have been reached without any regard to the question now presented. The difference between those two remedies (so to speak) is very obvious. The proceeding by attachment proper had its origin in ancient statutes,

5—59

having their source in the custom of London, and by some
supposed to be traceable to an ancient Roman practice (3
Am. & Eng. Ency. of Law, p. 183-4 of 2d ed.), while the
proceeding by which an agricultural lien may be obtained
and enforced is of comparatively recent origin, unknown to
our law prior to the passage of the act of 1866 above referred
to.   Again, the former is a proceeding by which a creditor,
in certain specified cases, may acquire a lien upon the prop-
erty of his debtor by process of law, while the latter is a pro-
ceeding by which a creditor may enforce a lien already
acquired by the act of the parties.   The former is an inci-
dent to an ordinary action at law, while the latter is not, and
has no relation to an action.   In view of this radical differ-
ence between these two remedies, it would seem to follow
necessarily that any statutory provision which, in terms, ap-
plies to the one, cannot be properly applied to the other,
unless there is some express provision to that effect.   But
even granting that I am in error in holding the views herein-
before presented, and assuming, for the sake of argument
only, that the effect of the act of 1885, now incorporated in
the Rev. Stat. as section 2519, was to incorporate into the
agricultural lien law the provisions of the attachment act
then in force, requiring the affidavits on which the warrant
to enforce an agricultural lien was granted, to be filed within
ten days after the issuance of such warrant in the clerk's
office, I still think that the order of the Circuit Judge should
be affirmed; for this requirement was complied with, as the
"Case" shows that such affidavit was filed in the clerk's
office within the prescribed time—the warrant having been
issued on the 13th of December, 1899, and both the warrant
and the affidavit having been filed in the clerk's office on the
18th of December, 1899.

But it is contended by the appellant that the attachment
act was amended by the act of 1899, 23d Stat., 31, whereby
the time within which the affidavit must be filed in the clerk's
office is reduced from ten days to forty-eight hours; and also
making the further requirement that the plaintiff shall cause

copies of the affidavits "to be served on the defendant with the summons, if he can be found within the county;" and that as the "Case" shows that the affidavit was not filed in the clerk's office within the forty-eight hours, and that no copy of the affidavit was served on the defendant, the Circuit Judge erred in refusing to vacate the warrant for failure to comply with these two requirements. It is very obvious that the position taken by the appellant rests solely upon the proposition that the act of 1899 is an amendment to the agricultural lien law. It does not seem to me that such a proposition can be successfully maintained, for several reasons. The first and most insuperable objection to such a construction of the act of 1899, is that it would bring the act into direct conflict with sec. 17, of art. III., of the Constitution, which declares that: "Every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." The title of the act is: "An act to amend section 250 of the Code of Civil Procedure of this State, relating to affidavits in attachment cases," and in the body of the act its provisions are confined solely to the purpose declared by the title. There is not a single word, either in the title or in the body of the act, which makes the remotest allusion to the agriculture lien law, or discloses any intent on the part of the legislature to make any alteration in or amendment of the agricultural lien law. On the contrary, some of the language used in the body of the act discloses an intent that its provisions should be confined to "attachment cases," as will presently be shown. It is obvious, therefore, that to give that act such a construction, as would make it applicable to another subject—the agricultural lien law, which, as has been shown, is so widely variant from the attachment law, in its origin, nature and effect, would bring that act into direct conflict with the mandatory provision of the Constitution above quoted; and surely it will not be contended that this Court can, by construction, give a statute such force and effect, as the legislature itself is prohibited from doing by such constitutional provisions. While,

therefore, the act of 1899, when confined to the purpose indicated by its title, and declared by the provisions contained in the body of the act, is free from any constitutional objection, it cannot, by construction, be made to apply to a wholly different subject.

In the next place, as I have intimated, the language used in the body of this act shows that it was not the intention of the legislature to extend its provisions beyond the object declared in the title of the act, to wit: to amend section 250 of the Code relating to affidavits in attachment cases. For in the body of the act two amendments are made: 1st, reducing the time within which such affidavits were required to be filed in the clerk's office from ten days to forty-eight hours; 2d, requiring that copies of such affidavits should "be served on the defendants with the summons, if he can be found within the county." Now the words which I have italicized in this quotation from the act, clearly indicate that the intention of the legislature was to confine the act to an amendment of the law regulating attachments, for while a summons is always issued in an attachment case, it is never issued in a proceeding to enforce an agricultural lien under the provisions of the statute relating to the mode of enforcing an agricultural lien, as the statute neither requires nor provides for the issuance of a summons. But there is another reason why the act of 1899 cannot be applied to this case. In Endlich on the Interpretation of Statutes, at section 85, the rule is thus stated: "that an act adopting by reference the whole or a portion of another statute, means the law as existing at the time of the adoption, and does not adopt any subsequent addition thereto or modification thereof," and is supported by a number of cases cited in the notes, two of which I have examined, and find that they support the text. The first of these cases, _United States_ v. _Paul_, 6 Peters, 141, was disposed of by Marshall, C. J., in a few words, announcing the doctrine of the text. In the other case, _Kendall_ v. _United States_, 12 Peters, at page 625, Thompson, J., in delivering the opinion of the Court, uses

this language: "It was not an uncommon course of legisla-
tion in the States, at an early day, to adopt, by reference,
British statutes; and this has been the course of legislation
by Congress in many instances where State practice and
State process has been adopted.    And such adoption has
always been considered as referring to the law existing at
the time of adoption; and no subsequent legislation has ever
been supposed to affect it.    And such must necessarily be
the effect and operation of such adoption.    No other rule
would furnish any certainty as to what was the law, and
would be adopting prospectively all changes that might be
made in the law.    And this has been the light in which this
Court has viewed such legislation."    These views, it seems
to me, are based upon sound reason and common sense,
While, therefore, the legislature, when it passed the act of
1885, which was entitled "An act to amend section 2398 of
the General Statutes, relative to the enforcement of agricul-
tural liens," might have been willing to adopt, by reference,
such of the provisions of the attachment law as were *then*
in force as a part of the agricultural lien law, it by no means
follows that it would be willing to adopt, prospectively, all
provisions that might thereafter be incorporated in the at-
tachment law.    Hence, while conceding, for the sake of
argument only, that by the act of 1885, the provisions of
which were subsequently incorporated in the Rev. Stat. of
1893, as section 2519, all of the provisions of the attachment
law *then* in force became incorporated in the agricultural
lien law, it by no means follows that any of the amendments
to the attachment law, made subsequent to the passage of the
act of 1885, and subsequent to the incorporation of its pro-
visions in the Rev. Stat. of 1893, became a part of the agri-
cultural lien law.

It seems to me, therefore, that in any view which may be
taken of the case, there was no error on the part of the Cir-
cuit Judge in refusing the motion to vacate the warrant for
the enforcement of the agricultural lien in this case, and his
order to that effect should be affirmed.