### 6806

### STATE v. FRANKLIN.

1. CONSTITUTIONAL LAW.—THE ACT, 24 STAT., 917, relating to selecting, drawing and summoning jurors is not obnoxious to section 17, Article III, of Constitution, providing that every act shall relate to but one subject, and that shall be expressed in the title.

2. IBID—RECONSTRUCTION STATUTES—JURORS.—The provisions of the Constitution requiring that grand jurors shall be electors does not conflict with the provisions of the Reconstruction Statutes of United States of 1868, 15 Statutes at Large, page 73, as the said statutes relate to the admission in Congress of the representatives of certain States.

3. CONTINUANCE asked for on ground that sufficient time had not been given defendant's attorneys to examine the evidence taken at the inquest by the coroner, under facts here, properly refused.

4. EVIDENCE—DYING DECLARATIONS.—Under the evidence in this case, the deceased was evidently *in extremis* and so thought when he uttered the declarations, properly admitted as dying declarations.

5. SELF-DEFENSE.—CHARGE in this case as to the law of self-defense held correct.

6. ARREST—CONSTABLE.—Instructions to the effect, it is the duty of a constable in executing an arrest warrant to use whatever force is necessary to enter a dwelling after demand and refusal, approved.

Before         J., Orangeburg, Fall Term, 1907. Affirmed.

Indictment against Pink Franklin and Sad Franklin for
murder of Henry E. Valentine. From sentence on verdict of
guilty, as to Pink Franklin, he appeals.

*Mr. Jacob Moorer,* for appellant.

*Solicitor P. T. Hildebrand,* contra, oral argument.

The opinion in this case was filed March 17, 1908, but petition for writ of error to United States Court held up remittitur.    The writ was issued and record certified up.

May 14, 1908.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.    The defendants, Pink Franklin and Sad Franklin, his wife, were tried at the fall term of the Court of General Sessions, for Orangeburg county, for the crime of murder of one Henry E. Valentine.

The defendant Sad Franklin was found not guilty, and we will therefore dismiss any further reference to her.

The jury found the defendant Pink Franklin guilty of murder, and he was duly sentenced to be hanged on the 25th day of October, 1907.    The defendant thereupon appealed to this Court, and it now becomes our duty to pass upon his grounds of appeal.

At the beginning, before the trial was entered upon, a motion was made to quash the indictment because the grand jury who found the true bill was unconstitutional:

First. Because it is alleged that the law providing for a grand jury was null and void, being in violation of section 17, Article III, of the Constitution of the State of South Carolina, which provides: "Every Act or Resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."    In effect it is alleged that the act relating to the selection, drawing and summoning of juries in the Circuit Courts of this State, approved the 7th day of February, 1902, 23 Stat., 1066, and the supplementary act entitled "An Act to amend an Act entitled 'An Act relating to the selection, drawing and summoning of Jurors in the Circuit Courts of this State,' approved the 7th day of February, A. D., 1902, by adding thereto a section to be known as section 18a, to provide

against an omission in preparing the jury list and boxes,"
approved January 21, 1905, Vol. XXIV, page 917, are null
and void.

Now, it is perfectly obvious from an investigation of these
two acts that their entire text relates to the subject matter of
juries, the empanelling, selection and drawing, the whole
purpose is to provide for juries.   It is well known that the
provisions of an Act devoted to one subject matter fills the
requirements of this section of the Constitution; *State* v
*Crosby,* 51 S. C., 247, 28 S. E., 529; *Blair* v. *Morgan,* 59
S. C., 52, 37 S. E., 45; *State* v. *Gibbes,* 60 S. C., 500, 39 S.
E., 1, and *Barksdale* v. *Laurens,* 58 S. C., 415, 36 S. E.,
661, and many more of the same character.   This exception
is overruled.

The second proposition of the appellant, that the Court
should have quashed the indictment because the Constitution
of 1895 provides that grand jurors shall be electors of the
State, and that electors under the Constitution of
1895 are different from the electors provided for in
the Constitution of 1868, and is, therefore, uncon-
stitutional; the United States Government having provided
in 1868 in an Act dated the 25th day of June, 15th Statute
at Large, 73, that no person who is allowed to vote or hold
office in 1868 shall be disqualified thereafter from being an
elector.

1st. Our Constitution of 1895 lays no restriction upon
color or previous condition to entitle one to be an elector.

2d. The Act of Congress cited has no reference to the
selection of jurors; it relates solely to the admission of the
representatives of several States into Congress.

3d. But above all things, it would be wholly inapplicable
to our constitutional provisions in regard to juries.   We
must hold, therefore, that this ground of appeal is not well
taken and is overruled.

Third: It is insisted that so much of our Acts of 1902 and
1905 as provide for fury commissioners in selecting grand
and petit jurors is unconstitutional and void.   We fail to

see how the selection of proper and competent jurors is unconstitutional. No reference is made to color or previous condition as prerequisites for service as jurors; for such jury commissioners are merely to select men of good moral character and legally competent; colored men when they have good character are competent for service on the juries; there is nothing in this ground, and we overrule the same.

Fourth: It is contended by the appellant that his motion for a continuance should be granted; he claims that time was not sufficient for him to examine the testimony at the coroner's inquest. It is true that the handwriting may not have been as good as desired, yet an inspection shows that every opportunity was afforded the appellant and his attorneys for inspecting such testimony. This Court has frequently held that motions for continuance are left to the discretion of the presiding Judge. After consideration of this ground of appeal, we overrule the same.

Fifth: The appellant insists that the testimony of the two witnesses as to the dying declarations of the deceased, Henry Valentine, should not have been admitted. We have carefully examined the testimony and the law. Quite recently this Court, in passing upon this question, held in the case of the *State* v. *McCoomer and Spivens:* "Dying declarations are admissible when it appears, 1st. That the death of the deceased was imminent at the time the declarations were made. 2d. That the deceased was so fully aware of this as to be without hope of recovery. 3d. That the subject of the charge was the death of the declarant and the circumstances of the death was the subject of the declarations. *State* v. *Banister,* 35 S. C., 295; *State* v. *Johnson,* 26 S. C., 152. Primarily the Circuit Judge decides whether these conditions have been met, and this Court will not interfere with his ruling except when clearly convinced that he reached an incorrect conclusion, prejudicial to the accused."

Also in the recent case of the *State* v. *Gallman,* the Court was careful to lay down the law on this subject, which was exactly in accord with the above cited case.    J. H. Easterling, one of the witnesses in this case, speaking of Henry Valentine's condition, says: "He seemed to be suffering very much," and when asked the question as to the condition of his mind, said: "I couldn't detect anything wrong with his mind.    He seemed to have realized that he was fatally shot; he had a hemorrhage; he did not seem to have any hopes of life," and when asked if the deceased made any explanation in regard to the effect of the wound, he said "that he knew that he was shot fatally, or thought so, and knew he was in a bad fix."

The witness Walter Hutto, when asked, did you talk with Mr. Valentine or not? he answered, "Yes, sir, I did." "Q. What was his condition at the time you talked with him?    A. He told me that he was shot by Franklin and was in a dying condition.    Q. Did he or not, at that time, have any hope of life?    A. No, sir; he said it was a death shot; he told me that Pink Franklin shot him, and it was a death shot, and after being there a short while he pulled off his watch and said to me, take my watch; I will have no further use for it."

It was very evident that the man was *in extremis;* he died a few hours afterward, and no doubt was expressed by any witness as to his dying condition.    Under the circumstances the admission of this testimony as dying declarations was perfectly legitimate.

The Circuit Judge was not in error and, therefore, this ground of appeal is overruled.

Sixth: The appellant insists that the Circuit Judge was in error in refusing to direct a verdict of not guilty.    The Constitution of this State is very explicit in its direction that the Circuit Judge shall not charge the jury upon the facts.    The orderly administration of justice requires that all proper evidence should be admitted and the jury must determine the facts; testimony should be exceedingly clear and without

contradiction where a Circuit Judge assumes to direct a verdict. There has been full testimony on both sides, and it is the province of the jury to pass upon the testimony. The Circuit Judge made no mistake here; this exception is overruled.

Seventh : The appellant insists that the Circuit Judge made a mistake when he declared the law relating to self-defense. What the Circuit Judge said on that subject was:

"The right of self-defense rests on certain well-defined principles, and they are not numerous. Where a person is without fault in bringing about the difficulty, where they are in danger of losing their lives or of sustaining serious bodily harm, and where there are no other probable means of escape save to kill the assailant, then the law says they have a right to kill, and that is self-defense. If the testimony satisfies you that the defendants were without fault in bringing about the difficulty, that they were in danger of losing their lives or of sustaining serious bodily harm, and that there was no other means of escape but to kill, then that makes out a case of self-defense, provided that a person of ordinary reason and firmness would have done the same, and provided that the same impression would have been created in the mind of a person of ordinary firmness and reason; that is, that they were in serious danger and that there was no probable means of escape. If they establish that plea then they are entitled to a verdict of not guilty. If any of the facts necessary to make out their plea is not established then their plea is not established and cannot avail. Each and every one of the facts necessary to the plea must be established."

And the Circuit Judge also said : "In this case, the defendant interposes the plea of self-defense, that is, that the killing was a lawful one, that it was done in the exercise of a lawful right. Where a person kills another in self-defense, that is lawful; when a person kills another and pleads that it was done in self-defense, on him rests the burden of proving his plea, not by the same measure as is incumbent on the State,

22—80

that he must prove his defense beyond a reasonable doubt, but he must prove it by the preponderance or greater weight of the evidence. That is in reference to his special plea. When the defendants here interpose the plea of self-defense, on them rests the burden of proving that plea by the preponderance of the testimony."

It seems to us that the Circuit Judge correctly interpreted the law in this matter; we will not interfere. Let this ground of appeal be overruled.

Eighth; The appellant alleges that the Circuit Judge erred in charging the jury as follows:

"A constable stands on the same footing as a sheriff. If a warrant is placed in his hands to make an arrest, it becomes his duty to make that arrest, and the law clothes him with the power to do all that is necessary to make the arrest; you see, then, that you will have to inquire as to whether it was necessary for him to go into the house or not. Ordinarily, if a constable goes up to a man and says, I arrest you, that is usually as far as he has to go, and that is all that is necessary if the other party submits to the arrest. The other party has a right to ask the reason for his arrest and his authority, if he has a warrant; it then becomes his duty to exhibit the same; then, if the party submits, that is as far as the officer has the right to go. If he refuses to submit to the arrest, then the officer has the right to go to whatever length is necessary to make him submit. If a man is in his own house, he has a right to go to that house and go through the same process; he has the right to go in the house if it is necessary; he has the right to call the person out, and if he refuses to come out, then he has a right to go in the house. If the door is open, he can go in; if the door is closed, he can demand that it be opened, and if that is refused, he can break down the door. He represents the majesty of the law, and that may override all resistance. It uses whatever force is necessary, and stops at nothing short of accomplishing its purpose. If it is necessary for them to pull down the house, they have the

right to do that. If an arrest is resisted and active resistance is resorted to, then the officer still has the right to use, as a matter of fact, whatever force is necessary to accomplish his purpose."

On the request of a juror whether "a constable or officer of the law has a right to enter a house without first stating his mission," his Honor said, "Not unless it was necessary." The juror then asked, "Is it not necessary for an officer to call to the party on the inside and state his mission?" His Honor replied, "I should think not; common prudence would demand that he ask admission, but he has the right to demand admission." The juror then asked, "If he received no response he would have the right to enter?" His Honor then said, "Yes, sir; or if the house were closed and he received no response, and he has good reason to believe that the refusal to answer amounts to a resistance to his authority, then he has the right to force an entrance. If admission is refused, he has a right to force admission."

No more responsible position is assumed by a peace officer than the right to make an arrest under the authority of a mandate of the law. The object is to carry into execution what the peace of society may demand. This wholesale objection to submission to a warrant of arrest is freighted with disaster to the community, and there should not be a hesitance on the part of good citizens to assist in preserving the peace and good order of society. The Circuit Judge was evidently influenced by such considerations, and made no mistake in what has just been stated to have been his position. Let this ground of appeal be overruled.

It is the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby, affirmed.

And it is ordered that the case be remitted to the Circuit Court for its direction, fixing a new day for the execution of the law upon the appellant, Pink Franklin.

MR. JUSTICE WOODS, *concurring.* I concur in this judgment, but think the following instruction of the Judge on

the subject of arrest should appear in support of the judgment: "When a person is charged with a crime before a magistrate and he issues a warrant, commanding an officer of the law to arrest the person so charged and places the warrant in the hands of such officer, then it becomes the duty of the officer to make the arrest, to execute the warrant. He may use whatever means are necessary to effect the arrest; he may go at whatever time will best effect the execution of the warrant, and he may employ whatever force is necessary. He may call to his assistance whatever person or persons he may deem necessary for purposes of identification, or otherwise; the law clothes him with all authority that it is necessary for him to use. It clothes him with no more than that, however; he is required to and must exercise a sound discretion, such as a person of ordinary prudence and firmness would exercise. If he exceeds the limit to which it is necessary for him to go, then he becomes a transgressor, and the law does not follow him in his trespass on the rights of another. When an officer seeks to arrest a person and makes known his character as such officer, it then becomes the duty of such person to submit to arrest; if that person refuses to submit to arrest, then he resists and becomes a further violator of the law in resisting the arrest; he has no right to do that, it is his duty to submit to the arrest. When a person comes up to arrest another, whether he has a warrant or not, that person has the right to demand the cause of the arrest, and to demand a sight of the warrant, and it is the duty of the officer to show him. A person has the right to resist an unlawful arrest; the Court has held that unlawful arrest is assault, and the law gives him the right to resist an assault and employ whatever means may be necessary to free himself from the assault. A person has the right to demand the authority of an officer, but he has no right to resist him by force. If he does, he must then suffer the consequences."

*This case is now in United States Supreme Court.*