13382

PLUMLEY v. STEWART *ET AL.*
SAME v. MORROW *ET AL.*

(163 S. E., 777)

*Messrs. Blythe & Bonham,* for appellant,

*Messrs. Morgan & Cothran,* for respondents,

April 11, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

These cases, by consent, were tried together in the County Court of Greenville County, and were so heard in this Court.

Following the designation of the attorneys, we refer to the case of *Plumley, appellant, v. T. P. Stewart* and *T. E. Morrow,* respondents, as "Case No. 1—The *Crop Case,*" and that of *Plumley, appellant, v. T. E. Morrow* and *J. B. Gosnell, respondents,* as "Case No. 2—The *Mule Case.*" On the title page of the transcript of record, inadvertently, the cases have been wrongly numbered, but that will not affect in any way our decision.

## Case No. 1—The Crop Case

Plumley, the appellant here, as landlord, instituted proceedings for the foreclosure of an agricultural lien, commonly referred to as an "attachment" (under Sections 5692-5701, Vol. 3, Code of 1922, Sections 8771-8780, 1932 Code), on certain crops of his tenant, Robert Wolfe, the landlord claiming a debt for advances of $427.56. To prevent the crops from being turned over to Plumley or sold in the proceedings, Wolfe, as principal, delivered his bond with the respondents, T. P. Stewart and T. E. Morrow, as sureties.

*In that proceeding, the defendant Wolfe answered to the merits and asked for an accounting. There was no motion to vacate or dissolve the warrant of seizure, or any attack on the validity of the proceedings.*

On trial of the case before County Judge Ansel, without a jury, there was a judgment in favor of Plumley against Wolfe for $390.23, and the costs of the suit, $17.32, a total of $407.58. *There was no judgment for the recovery of the specific property, the crops seized, or order for their sale.* The judgment entered was not paid.

Later, Plumley entered this suit, "Case No. 1," against T. P. Stewart and T. E. Morrow to recover the amount of the principal sum of the bond, $350.00, signed by them for Wolfe in the proceeding.

We turn next to

## Case No. 2—The Mule Case

The appellant, Plumley, as plaintiff, brought suit against Robert Wolfe to recover the sum of $375.00, alleged purchase price of two mules and harness sold by Plumley to Wolfe. The plaintiff, Plumley, had warrant of attachment for the recovery of the property issued under Section 519 of the 1922 Code of Civil Procedure (Section 546, 1932 Code). To prevent the delivery or sale of the property, Wolfe filed his bond in the sum of $750.00, signed by the respondents, T. E. Morrow and J. B. Gosnell, as sureties.

*The defendant Wolfe answered on the merits, denied the indebtedness claimed by the plaintiff, and pleaded payment thereof. There was no motion to vacate or dissolve the attachment, or any proceeding in any way attacking its validity.*

A jury trial in the County Court of Greenville County was waived, and the case was heard by County Judge Ansel, who filed an order giving judgment in favor of the plaintiff for the sum of $375.00, and costs, amounting to $17.25. Judgment for the total sum of $392.25 was entered up. *In the judgment rendered, there was no award of the personal property attached, and there was no valuation thereof by the Court.* The judgment entered was not paid.

Thereafter, Plumley instituted this action, "Case No. 2," in the County Court of Greenville County, against T. E. Morrow and J. B. Gosnell, sureties on Wolfe's bond, for the sum of $392.25, the amount of his former judgment, including costs.

It is not necessary to detail at length the answers of the defendants in the two cases. Their claims are succinctly stated in the brief of their counsel this wise: "The sureties are resisting these actions on the grounds that the proceedings in the cases (the first two cases) in which the bonds were given, were improvidently and irregularly issued and conducted."

In "Case No. 2—the *Mule Case*," the defendants alleged that the mules attached were kept by them at an expense of $40.00; that, because of the necessity, they sold and disposed of them at public auction to the highest bidder at the price of $185.00; that before the sale they tendered the mules to the plaintiff, which tender was refused; and, if the plaintiff was entitled to recover at all, the amount should be limited to $145.00, which amount they offered to pay over to the plaintiff.

The two cases last instituted, those to recover on the bonds, were brought to trial in the County Court of Greenville County, before his Honor, Judge Ansel, and a jury.

At the trial, the plaintiff (appellant here) introduced certain evidence, including the judgment rolls in the two former cases. Defendants presented no evidence.

There seems to have been some little confusion as to certain proceedings in the County Court. There is a difference of opinion among counsel as to whether a nonsuit was granted in the crop case and a directed verdict ordered in the mule case before the plaintiff had *"closed his case."* The plaintiff's counsel insists that, before he got through proving his case, the Judge made the rulings adverse to him, while defendants' attorneys are convinced that the orders of the Judge were entered at the proper time.

Regardless of the confusion, however, it is clear that in "Case No. 1—the Crop Case," the Court ordered a nonsuit; and in "Case No. 2—the Mule Case" (where plaintiff sued for $375.00 and interest), the Court, over the objection of plaintiff's counsel, directed a verdict in favor of the plaintiff for the sum of only $185.00.

The judgments of the Court having been duly entered, Plumley, the plaintiff, has appealed in both cases to this Court.

The respondents have also appealed from an order of the County Judge settling the case for appeal. We take up that appeal first.

The respondents proposed that the transcript of record be amended by the insertion of this language: "At close of the plaintiff's introduction of testimony the first motion of the defendants was for a nonsuit or directed verdict in the crop case."

At the hearing before the County Judge, affidavits from the attorneys and the Court stenographer relative to what had happened in the trial were introduced. The County Judge refused to allow the amendment, saying in his order thereabout: "I have carefully read the transcript furnished by the official stenographer, which shows what was said and done during the progress of the trial of the above cases, and I have thought over the matter and my recollection is that the report of the stenographer is correct."

As indicated before, we think there is no need for this Court, or any one else, to be much concerned as to the proposed amendment. The final results, as expressed in the orders of the County Judge, are the real things for consideration, and the incidental matter as to the time when the motions were made is not such as to cause us worry.

But this Court has repeatedly said—so often that it is not even necessary to cite the decisions—that we are bound by the holdings of the trial Judge as to occurrences in the trial of a cause. Even when there is a difference in the report of the official stenographer and that of the Judge, what the latter says governs. In this case, it appears that the Judge and the stenographer have agreed; so the respondents' appeal from the "order settling the case" is without merit.

In the main appeal, brought by the plaintiff, Plumley, it is not necessary to state the several exceptions. The important positions maintained therein, as disclosed in the brief of counsel, are:

"1. The judgments in the original actions are binding on the sureties in this action and cannot be attacked collaterally.

"2. Even if there were irregularities in the attachments in the original actions the defendant in that action waived such irregularities by answering upon the merits, and the sureties are bound by the acts of their principal, and the judgment against the principal is conclusive as to them."

In opposition to the positions taken by the appellant, the respondents contend that the sureties could "defend this case because the cases in which the bonds were given, were faulty."

In connection with the main contention of respondents, it is said, somewhat briefly stated, that, in the "Crop Case," the landlord did not have an agricultural lien, as provided in the laws relating to such liens, for the full amount of the debt he claimed, since many of the articles sold and advanced to the tenant were not for agricultural purposes; that the affidavit, upon which the warrant of attachment was based, did not comply with the provisions of the Code of Civil Procedure; that the bond given by the tenant, Wolfe, was not "in accordance with the provisions of law now of force in regard to actions for claim and delivery of personal property," the character of bond required; and that the verdict and judgment in the case were invalid, since there was no award for the recovery of the crops or their value, the judgment of the Court being for the recovery of money only.

With especial reference to the "Mule Case," the respondents therein urge that the office of the attachment under the "purchase money statute" is "to cause the property of such defendant for which the purchase money is payable to be attached in the manner * * * prescribed as a security for the satisfaction of such judgment as the plaintiff may recover"; that, the plaintiff in that case having taken a personal judgment only against Wolfe, it released the sureties; and that the respondents, the sureties, upon their tender of the property being refused, had the right to sell the same, and the plaintiff, Plumley, was only entitled to the proceeds of such sale.

While there are certain distinguishing features in the two cases, many legal principles are applicable to both of them, and, generally, we may follow the example set by counsel for both sides in their arguments by treating the two cases as practically one.

As before indicated, the procedure for the enforcement of an agricultural lien is a special statutory proceeding, and it is different in many respects from an attachment action. In the enforcement of an agricultural lien, the affidavit and statements required to be used to obtain a "warrant of seizure" (commonly called an "attachment") shall conform, as nearly as may be, to the practice regulating the issuing of warrants of attachment; but the conformity required as to the affidavit and statements does not apply in the subsequent proceedings in the enforcement of such agricultural lien. *Sharp v. Palmer,* 31 S. C., 444, 10 S. E., 98; *Blair v. Morgan,* 59 S. C., 52, 37 S. E., 45.

Conceding with the respondents that there may have been some irregularities in the proceedings resorted to in the enforcement of the agricultural lien on the crops and in the other action where the mules were attached for purchase money, our view is that it is not here necessary to discuss or pass upon such suggested irregularities, except those with reference to the bonds of the respondents to which we hereinafter advert. This for the reason that, under our decisions, Wolfe, the defendant ("lienee," properly, in the "Crop Case") waived any and all rights he had to question the validity of the proceedings. The record shows that Wolfe filed answers in the two cases and went into the trials without any effort or endeavor to set aside either the warrant to seize the crops or the warrant of attachment. The cases of *Bates v. Killian,* 17 S. C., 553; *Moody v. Dudley,* 138 S. C., 478, 137 S. E., 141; and *Skalowski v. Fisher,* 152 S. C., 108, 149 S. E., 340, 65 A. L. R., 1427, cited by the respondents, are in harmony with the proposition we have announced.

In the *Bates case,* it was held that a defendant who had given bond in an attachment action did not by that act alone waive his right to have the attachment discharged as irregularly and improvidently granted. That holding was approved in the *Skalowski case.* Those two cases are not applicable here, however, so far as the action of Wolfe was concerned, for the reason that Wolfe took no steps whatever to attack the validity of the proceedings in either of the two cases against him.

The conduct of Wolfe was much like that of the Dudley Lumber Company, the defendant in the *Moody case,* who answered on the merits and took other steps in the protection of its interest before moving to vacate the warrant of attachment. This Court sustained the refusal of the Circuit · Judge, under the circumstances, to vacate the warrant of attachment, on the ground that the defendant, by its conduct, was estopped to attack the validity of the attachment.

The *Skalowski case* was clearly distinguished from other cases in our recent decision in *Carter Grocery Co. v. Wilson,* 156 S. C., 546, 153 S. E., 566, 72 A. L. R., 118, where we expressly held that a defendant in an attachment case waived irregularities in the proceedings and lost his right to have the attachment vacated by giving the statutory bond *and by answering on the merits.* Touching somewhat that particular holding, and with especial reference to proceedings under the Agricultural Lien Law, see, also, *Johnstone v. Manigault,* 13 S. C., 403, and *Reames v. Lawrence,* 115 S. C., 419, 106 S. E., 31.

It is proper to assume that in the "Crop Case" the defendant Wolfe "to recover immediate possession of the crop or crops so seized," undertook to enter into bond, under the provisions of Section 5701 of Volume 3, Code of 1922 (Section 8780, Volume 3, Code of 1932), applicable to the release of crops seized under the Agricultural Lien Law. A provision of that section is that the bond shall be "in accordance with the provisions of law now of force in regard to actions for claim and delivery of personal property." The

language of the bond executed by Wolfe and his sureties, Stewart and Morrow, according to the record, so far as necessary to be here set forth, with the principal words for construction italicized by us, was as follows: "That the plaintiff has caused to be attached certain personal property of the defendant enumerated and specified in said affidavit and process accompanying the same; and that the property has not yet been delivered to the plaintiff and that defendant desires to have the return of the property made to him and that it is provided by statute that upon such application for return, the defendant shall furnish an undertaking as in said statute provided, now therefore be it known that we, Robert Wolfe, principal, and T. E. Morrow and T. P. Stewart, sureties, hereby acknowledge ourselves, jointly and severally, bound and holden unto the said plaintiff in the sum of Three Hundred and Fifty Dollars ($350.00) upon the condition herein written; *the condition hereof being that if the said Robert Wolfe, will on demand pay or cause to be paid to the said plaintiff, his certain attorneys, executors, administrators or assigns, any judgment that may be recovered in said action by the plaintiff against the said Robert Wolfe not exceeding the amount herein specified, to wit:* Three Hundred and Fifty Dollars ($350.00). * * * "

The undertaking of the defendant in a claim and delivery action, by the terms of Section 474 of the 1922 Code of Civil Procedure (Section 558, 1932 Code), is to be "executed by two or more sufficient sureties, to the effect that they are bound in double the value of the property, as stated in the affidavit of the plaintiff, for the delivery thereof to the plaintiff, if such delivery be adjudged, *and* for the payment to him of such sum as may, for any cause, be recovered against the defendant."

(Note: The provisions of the Act of 1930 (36 Stats. 1347), appearing as Section 557 of the 1932 Code, have no relation to any of the questions in the case before us, since both the bonds involved in the litigation were executed prior to the passage of that enactment.)

It is the contention of the respondents that the condition of the bond in the "Crop Case" had not been breached, since the sureties of that bond, under the statute with reference to the defendant's bond in claim and delivery, were only liable for the delivery of the property or its value as found by a verdict of a jury and the judgment of the Court; that in the case only a money judgment was rendered against Wolfe, and there was no judgment of the Court for the delivery of the property. To support the position taken, the case of *Wilkins v. Willlimon,* 128 S. C., 509, 122 S. E., 503, 504, is strongly relied upon.

The *Wilkins case* was an action against a surety on a defendant's bond executed in claim and delivery proceedings. In the original action, the plaintiff, Mrs. Wilkins, in a suit against W. M. Willimon for the recovery of the possession of an automobile covered by a mortgage, had a verdict in her favor in the following form: "We find for the plaintiff Two Thousand Three Hundred and Seventeen and 32/100 ($2,317.32) Dollars." A judgment on the verdict was entered against W. M. Willimon. The surety, R. C. Willimon, the defendant in *Wilkins v. Willimon,* was not a party to the original action. In the suit against the surety, the reported case, this Court held that the surety was not liable on the redelivery bond under Section 474, Code of Civil Procedure, 1922 (Section 558, Code of 1932), in view of Sections 542 and 600 of that Code (Sections 602 and 661, 1932 Code), since the judgment in the original claim and delivery action was not for the recovery of the property or its value, with damages for detention, but for the amount of the debt secured by the mortgage.

Section 542, 1922 Code (Section 602, 1932 Code), relates to verdicts to be rendered in actions for recovery of specific personal property, and Section 600, 1922 Code (Section 661, 1932 Code), relates to the judgment of the Court in such actions. The proper verdict to be rendered and the judgment to be entered in a claim and de-

livery action is fixed in those sections. The provisions of the sections have no relation whatever to verdicts and judgments in proceedings to enforce agricultural liens. The action in claim and delivery is an entirely different proceeding to the statutory proceeding to foreclose an agricultural lien, as will be seen from the language of Mr. Justice Woods in *Lightsey v. Rentz,* 85 S. C., 401, 67 S. E., 456, 457, where, speaking for this Court, he said: "The proceeding to foreclose agricultural liens is not provided by the Code of Procedure, but by an entirely separate statute incorporated into the Civil Code. This separate statute lays down the steps which both the lienee and lienor must take to have their rights protected, and the time within which these steps must be taken. In case of foreclosure against him a specially favorable provision is made for the lienor [lienee] in giving him the simplest possible remedy. He is spared the formal pleading and proceedings necessary to an action of claim and delivery, and is allowed to make and have tried the issue as to the amount due by a simple notice and affidavit."

While the person whose crop may be seized (the lienee), seeking to recover possession of the crop seized at the instance of the lienor (the person holding the lien), is required, under Section 5701, Code of 1922 (Section 8780, 1932 Code), to enter into bond, as required in claim and delivery, nothing in the Agricultural Lien Law directs the proceedings thereafter to follow in any way the necessary procedure in claim and delivery. There is nothing in the statutes as to the enforcement of agricultural liens setting forth any form or requirement as to a verdict or the judgment to be entered up. The procedure as to the making up of the necessary issues to be determined, when the lienee contests in any way the claim of the lienor, is very simple. No formal answer is required on the part of the lienee. An affidavit to the effect that the claim is unjust, in whole or in part, seems to be all that is necessary to have the Court, with proper jurisdiction, pass upon the issues for determination.

See *Johnstone v. Manigault,* 13 S. C., 403, and *Lightsey v. Rentz, supra.*

Regardless of the holding of the Court in *Wilkins v. Willimon, supra,* as to the proper construction to be given the usual bond of the defendant in claim and delivery, this Court has squarely decided the issue hereabout against the contention of the respondents, and has construed otherwise the bond given by the lienee (the defendant) in a proceeding of foreclosure of an agricultural lien. The case of *Barnes v. Bamberg,* 55 S. C., 499, 33 S. E., 580, was a proceeding to enforce a landlord's lien for rent under the Agricultural Lien Law, and the proceeding is exactly the same as that to enforce a lien of the landlord for agricultural supplies. The lienee, Bamberg, to regain possession of the crops seized, entered into a bond conditioned "for the delivery of said property to the said J. W. Barnes, if such delivery be adjudged, and for the payment to him of such sum as may for any cause be recovered against the said W. H. Bamberg." Mr. Justice Jones, for this Court, said: *"As we construe the bond given by Bamberg in this cause, it was conditioned to pay such judgment as may be recovered against Bamberg in the special proceedings to collect the rent."* In that case, without any new action, but in the agricultural lien foreclosure proceeding, this Court approved the simple procedure of declaring the lienee's bond forfeited and directed judgment to be entered against the sureties for the amount of the rent found to be due by the lienee (renter). This procedure seems to have been approved also in *Lightsey v. Rentz, supra.*

It is further contended by the respondents in the "Crop Case" that the plaintiff cannot recover on the bond executed by them therein, for the reason that the language setting forth the conditions of the bond did not meet the provisions of the statute as to a bond in claim and delivery. The respondents in the "Mule Case" urge that there could be no recovery on the bond signed by them, for the reason that it

did not comply with the statutes relating to the bond of a defendant in an attachment action. The applicable legal principles will dispose of the questions relating to both the bonds.

As has been seen already, the language setting forth the condition of the bond in the "Crop Case" was not in the usual language employed in a bond in claim and delivery.

In the action for the attachment of the mules, under the purchase-money statute (Section 519, 1922 Code, Section 546, 1932 Code), the bond of the defendant and his sureties, after reciting that "the plaintiff has caused to be attached the two mules described in his affidavit," and that "the defendant desires a return of said mules to him," the principal and the sureties acknowledged themselves, jointly and severally, bound unto the plaintiff, Plumley, in the sum of $750-.00, upon the condition "that if the said Robert Wolfe shall pay or cause to be paid to the plaintiff, * * * such sum or sums as may be awarded in said action as damages and costs. * * *"

Under Section 522, Code of 1922 (Section 549, 1932 Code), included in the "purchase money statutes" as enacted in 1904 (24 Stats. 452), the undertaking on the defendant's part in a suit for attachment of property for purchase money is to be as that provided in Sections 515, 516, and 517 of the 1922 Code (Sections 542, 543 and 544, 1932 Code). By Section 517, 1922 Code (Section 544, 1932 Code), the undertaking to be executed by the defendant is required to be "to the effect that such sureties will, on demand, pay to the plaintiff the amont of judgment that may be recovered against the defendant in the action, not exceeding the sum specified in the undertaking which shall be at least double the amount claimed by the plaintiff in his complaint."

In neither the statutes relating to attachment nor in those relating to seizure of crops under an agricultural lien is it provided that the property attached or seized shall be turned

over to the plaintiff, even if the defendant fails to execute a redelivery bond. Under Section 506, Code of 1922, (Section 533, Code of 1932), the property seized by the officer in an attachment suit, or the proceeds of such as shall have been sold, "shall be kept to answer any judgment which may be obtained in such action." By the provisions of Section 5696, Vol. 3, 1922 Code (Section 8775, 1932 Code), the crops seized in an agricultural lien foreclosure proceeding are to be sold by the officer, and the proceeds applied in the extinguishment of the amount due on the lien, or held "subject to the decision of the Court." In this connection, it is to be noted that the method of handling the property seized in a claim and delivery proceeding is entirely different; in an action of that character, if the defendant does not replevy the property within the required time, the same is turned over to the plaintiff in the action. The reason for the distinction is clearly obvious; in the claim and delivery action, the plaintiff claims title to the property; in the attachment action and in the lien foreclosure proceeding, the plaintiff concedes title to the property in the defendant, alleging, however, that the property is subject to some claim or lien he has against the property and the owner, or both.

While the lienor (the landlord), seeking to enforce his lien for supplies advanced to the lienee (the renter), is confined strictly to the requirements of the statutes relating to the enforcement of agricultural liens (*Kennedy v. Reames*, 15 S. C., 548), the lienee, or renter, is not limited to the provisions of those statutes in the assertion of his legal rights and may proceed otherwise (*Segler v. Coward*, 24 S. C., 119; *McDowell v. Kimbrell*, 120 S. C., 251, 113 S. E., 75). While the lienee may not recover the property in the hands of the officer in a claim and delivery action (*Dicks v. Nimmons*, 88 S. C., 428, 71 S. E., 47), he may, under certain circumstances, proceed in an action for injunction to prevent its sale and have his rights determined (*McDowell v. Kimbrell, supra*).

The requirements as to the undertaking and affidavit on the part of the lienor must be complied with. *Kennedy v. Reames, supra; Sease v. Dobson,* 33 S. C., 234, 11 S. E., 728; *Doty v. Boyd,* 46 S. C., 39, 24 S. E., 59; *Townsend v. Sparks,* 50 S. C., 380, 27 S. E., 801; *Forrest v. McBee,* 72 S. C., 189, 51 S. E., 675. But we have found no case in our reports tending to hold that the person whose crops have been seized is limited to any strict technical proceeding to secure the release of his seized crops. Along with the clear intention expressed in the statutes, as shown by decisions already cited, to give the lienee an easy and simple manner, without much formality, to have his rights submitted to and determined by a Court of competent jurisdiction, it is also evident that the legislative intent, as construed in many cases by this Court, was to give the lienee the other right to have his crops released and put back in his possession upon his execution of a sufficient bond guaranteeing the payment of the amount of the lien.

What were the purposes of the bonds executed and delivered by Wolfe and his two sets of sureties in these cases? In the "Crop Case," the bond was given that the crops seized by the sheriff should not be sold by that officer, and neither should the crops be continued in his possession, but that the crops should be turned back into the possession of Wolfe, who, from that time on, would have the right to dispose of them as he saw fit. In the "Mule Case," the purpose of Wolfe and his sureties was to prevent the sheriff, who had the custody of the property, from keeping the mules and harness "to answer any judgment which may be obtained in such action."

In an attachment suit, cited by respondents, this Court, through Mr. Chief Justice Simpson, said that the effect of the provision as to the giving of an undertaking on the part of the defendant was "to convert the action from one *in rem* to one *in personam,* with security by the defendant for the payment of the debt." Continuing, that distinguished

jurist said: "This is done by permitting the defendant to give bond for the payment of the debt in the event that the plaintiff's action succeeds, the purpose of an attachment being to obtain security for the debt by securing a lien on property. The bond provided for is substituted in the place of this lien, and the property is released." *Bates et al. v. Killian,* 17 S. C., 553. To the same effect is the general principle announced in 6 Corpus Juris, 359, where it is said: "Where a bond to dissolve an attachment is conditioned to satisfy any judgment that may be recovered against defendant, the judgment recovered in the attachment suit fixes the amount to be paid under the bond, although it may exceed the value of the property, up to the amount of the penalty of the bond."

When the bond was given in the "Crop Case," securing thereby the release of the crops, it was clearly the intention of the parties that the bond would stand for any judgment recovered against Wolfe, the lienee. *Barnes v. Bamberg, supra.*

While it is apparent that the intention of the sureties, as well as Wolfe, when they executed and delivered the bonds, was to obtain the release of the attached and seized property, nevertheless, it is earnestly urged by counsel for the respondents that in neither instance did the bond comply with the provisions of the statutes as to such instruments, and, on account of the manner in which the conditions therein were stated, the sureties were not liable for the judgments obtained by the appellant against. Wolfe. We cannot agree with the position taken. The property in both instances was seized in accordance with the provisions of the statutes. Evidently, it was, not only the intention of the sureties to aid Wolfe in securing the release of his property, but it was the further intention of all the parties to the bonds, both Wolfe, the principal, and all his sureties, as well as the purpose of the officer who accepted the bonds, to comply with the statutory requirements.

The bonds, therefore, in our opinion, should be construed in connection with the language of the statutes in reference to the execution and form of the bonds, and the purposes for which they were intended to be given, as the following authorities show:

"It is a familiar principle, applicable to attachment as well as other bonds, that, though voluntary and not authorized by statute, if they do not contravene public policy or violate any statute, they are valid and binding on the parties to them. And it is also a settled rule of law that bonds intended to be taken in compliance with statutes, although failing in such compliance, will if entered into voluntarily and founded upon a valid consideration, and if they do not violate public policy or contravene any statute, constitute valid common law obligations and will be enforced by common law remedies. Although the statute may provide for the execution of a bond, yet the form of the obligation is not material; and if the instrument is technically an undertaking it yet will be valid and enforceable." 2 R. C. L., 885.

"Except where the statute, either expressly or impliedly, declares all bonds void which do not strictly comply with the requirements therein prescribed, a bond need not be in the exact words of the statute, and the fact that it slightly varies from the form prescribed will not invalidate it, provided it includes substantially all that the statute requires, that is, such obligations as are imposed by the statute, and allows every defense given by law, as where it is more specific than the statute requires, but imposes no additional obligation." 9 C. J., 24.

The case of *Jamison v. Knotts,* 12 Rich. (46 S. C. L.), 190, seems to us to be expressly in point. The action there was on a bond executed under the order of the commissioner in equity providing for the forthcoming of certain negro slaves, to abide the further order of the Court. Said Judge O'Neall in his opinion for the Court: "The bond is first objected to as void for uncertainty. It is enough to say, that

the bond must be read, as part of the proceedings, in the case of *Simmons v. Tyler*, in the Court of Equity of Orangeburg District. When thus read, all the uncertainty vanishes; and it becomes light as day, what was intended by the obligor and obligee."

In *Treasurers of State v. Bates*, 2 Bailey (18 S. C. L.), 362, it was held: "A bond taken under a statute is not void for not conforming precisely to the directions of the statute, unless it is made so by express enactment, or the variance was intended to evade the statute, or to operate as a fraud upon the obligors." (Syllabus.)

*Cavender v. Ward*, 28 S. C., 470, 6 S. E., 302, 304, is of particular interest, since the suit there was on a bond given by the defendant to prevent the delivery and sale of two bales of cotton, claimed by the landlord under his lien for rent and supplies. The statute in existence at that time did not even provide for the giving of a bond of that character, and the bond was poorly drawn, but a judgment against the surety was sustained by the Supreme Court. From the opinion of Justice McGowan, we quote the following extracts:

"Then, as to the point that the bond sued on was illegal and void, and the obligors themselves may have it so declared. It seems that, under the original agricultural lien law no officer was authorized to issue a warrant to seize the crop of a lienor [lienee], except the Clerk of the Court. It was so decided in *Jones v. Clarkson*, 16 S. C., 628 (1882). Soon after that decision (in 1884), the legislature amended the law so as to give trial justices jurisdiction in such cases where the amount claimed did not exceed $100.00: 'Provided, that if the person to whom such advances have been made shall give notice in writing,' etc., 'that the amount claimed is not justly due, then the trial justice issuing the warrant shall,' etc., 'decide an issue which shall be made up, in which the person who has made such advances shall be the actor,' etc. It will be observed that this act, although assimilating the new proceeding closely to that of the ordinary

'claim and delivery of personal property,' did not make any provision as to what should be done with the crop seized during the litigation under the 'issue' framed. This omission was probably observed, and, at the very next session of the legislature (1885), another amendment was passed, which provided that a lienor [lienee] whose crop was seized under an agricultural warrant issued by a trial justice 'shall have the right, upon entering into bond in accordance with the provisions of law of force in regard to actions for claim and delivery of personal property, to recover immediate possession of the crop or crops so seized,' etc., 19 St., 329.

"The bond in this case, although somewhat inartificially drawn, is substantially in accordance with this last amendment 'for the payment to the plaintiff of such sum as may, for any cause, be recovered against the defendant' which is now the law of the State. * * * It may be that the bond was not statutory, in the sense that, at the time it was executed, it was not expressly authorized by the statute; but at the same time it cannot be said that it was illegal, in the sense that it was either prohibited by the statute, or the subject-matter was forbidden as fraudulent, immoral, or against public policy. * * *

"*We know of no principle which requires the Court to sustain the defense, and relieve the defendants from an obligation voluntarily assumed by themselves, and upon the faith of which the two bales of cotton were surrendered.*" (Italics added.)

Having in mind the purpose sought to be accomplished by Wolfe, the principal, and his sureties, when they executed and delivered the bonds in these cases, we think, using the language of Judge O'Neall, "it becomes light as day, what was intended by the obligor and obligee," and that such intention was that the bond should be given, accepted, and stand, under the law, to take the place of the property attached and seized, upon which property the plaintiff, Plumley, alleged the existence of liens in his favor.

The position of the respondents, which, in a way, seems to have been upheld by the County Judge, that the sureties had the right in the trial of these cases to attack the irregularity of the former proceedings and to have re-examined the facts upon which the appellant based his claims for liens on the property, is untenable. In an agricultural lien case, *Cheatham v. Morrison,* 37 S. C., 187, 15 S. E., 924, this Court held adversely to the proposition advanced. The plaintiff, Cheatham, secured judgment for rent due him against one Seawright, whose crops had been formerly seized but released upon the execution and delivery of a bond by Seawright, with Morrison and another, as sureties, An action against the sureties on the bond followed, and judgment against them for the amount due Cheatham by Seawright was obtained. The plaintiff in that action introduced the record of his former judgment against Seawright to which the defendants objected, they desiring to attack the amount of rent found due to Cheatham by Seawright. On appeal to this Court, the refusal of the Circuit Judge to allow the judgment to be attacked in the desired manner was sustained. Agreeable to the holding in that case, see, also, *Trimmier v. Thomson,* 19 S. C., 247. The cases of *Lightsey v. Rentz, supra; Barnes v. Bamberg, supra;* and *Bolt v. Milam,* 110 S. C., 399, 96 S. E., 614, are also in harmony with the decision in the *Cheatham case.*

The final matter to be noticed relates to the right of the sureties which they attempted to exercise, to sell the mules themselves at public auction, and, upon tender of the amount received from such sale to the appellant, to be relieved from the liability on the bond in the "Mule Case." In all our search of many decisions of this Court, we have not been able to find any authority to justify the position taken. Neither do we find anything in the statutes relating to attachment which gives the sureties, or the principal either, the right to be relieved entirely from the bond upon payment of the sale price of the attached prop-

erty. The sureties had the right to pay all, or even a part, of the judgment against their principal Wolfe, but part payment, even when the money came from the attached property, could not result in a discharge of the entire judgment. See *Bolt v. Milam, supra.*

The judgment of this Court is:

(1) That the appeal of the respondents as to the order of the County Judge settling the case for appeal be, and the same is hereby, dismissed.

(2) That the order of nonsuit in "Case No. 1—the Crop Case," of *Plumley v. T. P. Stewart* and *T. E. Morrow,* be, and the same is hereby, reversed, and the case is remanded for trial in the lower Court.

(3) That the directed verdict in "Case No. 2—the Mule Case," of *Plumley v. T. E. Morrow* and *J. B. Gosnell,* and the judgment on that verdict, be, and the same are hereby, reversed and set aside, and the case remanded to the lower Court for a new trial.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON concur.